[Civ. No. 39097. First Dist., Div. Three. Nov. 10, 1976.]

SPOKANE EYE CLINIC, INC., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND
COUNTY OF SAN FRANCISCO, Respondent;
BRETT LEWIS, a Minor, etc., et al., Real Parties in Interest.

COUNSEL

Berry, Davis & McInerney and Joseph B. Phair for Petitioner.

No appearance for Respondent.

Cartwright, Saroyan, Martin & Sucherman, Robert U. Bokelman, Randall D. Morrison and Robert E. Cartwright for Real Parties in Interest.

## OPINION

**SCOTT, J.**—The Spokane Eye Clinic, a Washington corporation, petitioned for a writ of mandate to compel the quashing of service of process in the State of Washington in an action commenced in San Francisco. The petitioner, as a resident of the State of Washington, contends that it did not have the minimal personal contact in California

to subject it to the exercise of jurisdiction by California courts, and that to uphold the validity of such service is inconsistent with due process under the United States and California Constitutions.

 The question presented is whether the referral of a patient to a California doctor is sufficient to subject an out-of-state clinic to the jurisdiction of California courts for alleged medical malpractice. We conclude that such referral is insufficient contact with California.

The facts here disclose that Brett Lewis, a minor, had been treated for a number of years for glaucoma by Dr. William Richter and was seen by Dr. Bruce Ellingsen, physician employees of petitioner, Spokane Eye Clinic, in the State of Washington. Brett was and is a resident of Washington, and his treatment by petitioner was performed totally in Spokane, Washington. Brett was referred by Dr. Richter to San Francisco eye specialists, who performed surgery on Brett's eyes at St. Mary's Hospital in San Francisco. After the operation, Brett lost the sight of both eyes.

This action for medical malpractice was commenced against the San Francisco physicians and St. Mary's Hospital. Plaintiffs brought Dr. Richter to San Francisco for the taking of his deposition. After the deposition, plaintiffs concluded that the Washington physicians and their employer, petitioner, were negligent in their treatment of Brett in Washington, and that their negligence contributed to Brett's resultant condition. From information developed by pretrial depositions, it can be inferred that the Washington doctors delayed too long in referring Brett to California for surgery. As a result of the delay it was necessary to operate on Brett on an emergency basis, although he had an infection. Had a timely referral been made, surgery could have been performed when Brett was infection free, presumably with a better opportunity for satisfactory results. Thereafter, the complaint was amended to include petitioner and several of its physician employees. Dr. Richter was served in San Francisco. Petitioner was served by delivery of process to petitioner's designee for receiving process in the State of Washington.

None of petitioner's physician employees are licensed to practice medicine in California. Petitioner and its doctors received no referral fee relative to the services performed in California for Brett.

The contacts by petitioner in the State of California which plaintiffs, real parties in interest, allege are sufficient minimal contacts to justify the exercise of personal jurisdiction are: (1) referral of Brett to the San Francisco physicians; (2) the practice of petitioner's doctor employees in referring a minimum of three patients per year to San Francisco physicians for treatment; and (3) several of petitioner's physician employees had previously studied in the San Francisco physicians' offices the treatment of glaucoma patients.

■ "Under Code of Civil Procedure section 410.10, a California court may exercise jurisdiction over nonresidents on any basis not inconsistent with the United States or California Constitutions. This section manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations. (*Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893 at p. 898 [80 Cal.Rptr. 113, 458 P.2d 57]; *Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 302 [118 Cal.Rptr. 548].) ■ As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident individual so long as he has such minimal contacts with the state that '. . . the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316-317 [90 L.Ed. 95, 101-103, 66 S.Ct. 154, 161 A.L.R. 1057], citations omitted; *Cornelison* v. *Chaney, ante* [16 Cal.3d 143 (127 Cal.Rptr. 352, 545 P.2d 264)].)" (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].)

■ A nonresident can become subject to the jurisdiction of California courts when its activities may be described as "extensive or wide-ranging" (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57]), or substantial or continuous (*Perkins* v. *Benguet Mining Co.* (1952) 342 U.S. 437 [96 L.Ed. 485, 72 S.Ct. 413]). In such circumstances, it is not necessary that the specific cause of action alleged be connected with defendant's business relationship in the forum. (*Cornelison* v. *Chaney,* 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) Here, the mere referral of a few patients per year, without a referral fee, cannot be said to constitute such activity in California as to form the basis for jurisdiction. The additional fact that petitioner's doctor employees studied under or with the California doctors to whom they referred their patients seems completely irrelevant to real parties' claim of jurisdiction.

■ Jurisdiction can also be founded in defendant's activity *in the forum* in relation to the particular cause of action. "In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Thus, as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend. The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction. (*Hanson* v. *Denckla, supra,* 357 U.S. 235, 250-253 [2 L.Ed.2d 1283, 1295-1298]; *McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, 223 [2 L.Ed.2d 223, 226]; *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893, 898-899; see 14 West's Annot. Code Civ. Proc. (1973 ed.) § 410.10, p. 459 [Deering's Code Civ. Proc., § 410.10, p. 667], for the Judicial Council's extensive comment on the bases of jurisdiction.)" (*Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 148.)

■ As to this cause of action, the defendant itself performed no act in California. Here, the record fails to demonstrate that petitioner availed itself of the privilege of doing business in California or of the benefits and protection of California laws. Petitioner was to receive no economic benefit from the referral. The referral was made for the patient's benefit. The most that petitioner could foresee from the referral was that the California physicians would medically treat its patient.

The court in *Cornelison* v. *Chaney* set forth some of the considerations involved in the balancing of the convenience of the parties as "the relative availability of evidence and the burden of defense and prosecution in one place rather than another; the interest of a state in providing a forum for its residents or regulating the business involved; the ease of access to an alternative forum; the avoidance of a multiplicity of suits and conflicting adjudications; and the extent to which the cause of action arose out of defendant's local activities." (16 Cal.3d at p. 151.) It appears that plaintiffs in this case can pursue their cause of action against petitioner in Washington. The witnesses in the alleged malpractice in Washington are there, not in California. The burden on the petitioner to

defend the suit in California is certainly greater than any inconvenience to the plaintiffs. Although it is only one of the considerations in the balancing of convenience, the plaintiffs here cannot be "whip-sawed" between conflicting claims of two assertedly negligent medical teams, because Dr. Richter has been personally served with summons in California and jurisdiction over him is undisputed. In evaluating "the interests of the state in assuming jurisdiction" (*Cornelison* v. *Chaney, supra,* at p. 148), there is a basic interest of California in denying jurisdiction. Referral to California clinics of patients by physicians in other states is not uncommon. But to penalize out-of-state physicians by subjecting them to suit here on the mere basis of such referrals would tend to discourage future referrals to California. This would result in a detriment to the people of California by inhibiting the establishment of convenient local specialty medical practices which serve not only citizens of California but citizens of other states.

■ Another basis for jurisdiction arises when a defendant has caused an "effect" in this state by an act or omission which occurs elsewhere. (*Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296 [118 Cal.Rptr. 548]; see also Judicial Council comment to Code Civ. Proc., § 410.10.) It is argued that the alleged negligent medical treatment of Brett in Washington and the delayed referral of him to California for further treatment are substantial contributing factors to the injury sued upon in California. As such, there is an effect in California from the act performed in Washington. However, in *Sibley* v. *Superior Court, supra,* the court stated: "The mere causing of an 'effect' in California, however . . . is not necessarily sufficient to afford a constitutional basis for jurisdiction; notwithstanding this 'effect,' the imposition of jurisdiction may be 'unreasonable.' " (16 Cal.3d at p. 446.) Assuming, here, that the effect is present, we must determine if the imposition of jurisdiction would be reasonable under these facts.

"Subsequent to *International Shoe,* the federal Supreme Court has amplified the standard by which to determine whether imposition of jurisdiction is constitutionally 'unreasonable.' In *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228], for example, the high court held that in those cases in which jurisdiction is sought on the basis of defendant's occasional activities, '. . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' (*Id.,* at p. 253 [2 L.Ed.2d at

p. 1298].) In *Buckeye Boiler, supra,* we reaffirmed the necessity for such an inquiry and asked the additional question whether, considering defendant's activity, extension of jurisdiction over him would be 'fair.' " (*Sibley* v. *Superior Court, supra,* at pp. 446-447.)

As to the fairness inquiry, there is simply no California interest in an action against a Washington clinic by a Washington resident whose treatment by the clinic was solely in Washington.

█ We conclude that, under all the circumstances, it would offend traditional notions of fair play and substantial justice to subject petitioner to the jurisdiction of the California courts.

Let a peremptory writ of mandate issue compelling respondent court to quash service of process on this petitioner.

Draper, P. J., concurred.

**BROWN (H. C.), J.,*** Dissenting.—I agree that the mere referral of a patient to a California physician is insufficient to subject the out-of-state clinic to the jurisdiction of the California courts. Here, however, petitioner has subjected itself to jurisdiction by causing an "effect" in the state by an act or omission which occurred in Washington. (See *Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 303 [118 Cal.Rptr. 548].)

Petitioner treated plaintiff Brett Lewis for two years before referring him to the San Francisco specialists. There are indications in the record that the reference by petitioner had the possible dual purpose of assisting the patient to recover from glaucoma and, at the same time, attempting to avoid the effects of its negligence in making a proper examination of the optic disc, which examination would have revealed the extent of progress of the glaucoma and led to earlier treatment of the condition. Dr. Richter, in his deposition, made statements that could be construed as admissions that the treatment he had rendered Brett did not meet the standard of care rendered by physicians in that community.

I feel justified in basing the refusal to quash the service of process upon the evidence that the petitioner has caused an effect in the State of California by these acts and omissions in the State of Washington. It

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

cannot be ascertained now whether the evidence at trial will establish a failure to follow established standards of care by either the Spokane Eye Clinic or the San Francisco physicians. However, the admission of Dr. Richter, and the deposition testimony of the San Francisco physicians relative to the delay in referring Brett to San Francisco for care constitute sufficient bases to conclude, for the purposes of ruling on this petition, that petitioner has caused an effect in the state by its omission in Washington. Its treatment of Brett Lewis and the delayed referral of him for further treatment in this state are, if established, substantial contributing factors to the injury sued upon in California.

"Under Code of Civil Procedure section 410.10, a California court may exercise jurisdiction over nonresidents on any basis not inconsistent with the United States or California Constitutions. This section manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations. [Citations.] As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident individual so long as he has such minimal contacts with the state that '. . . the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' [Citations.]" (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].)

I feel that the maintenance of the action in California does not offend traditional notions of fair play and substantial justice. Further, the exercise of such jurisdiction is reasonable, a requirement pointed to in *Sibley* v. *Superior Court, supra,* at pages 443, 446, 447. (See also *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]; *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228].)

In referring Brett Lewis to the San Francisco specialists, petitioner committed its patient to physicians and facilities whose standards are set and enforced under California law. This purposeful invocation of the protection of California law satisfies the first requirement for a determination that jurisdiction would be "reasonable."

I believe also, contrary to the majority view, that *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 148 [127 Cal.Rptr. 352, 545 P.2d 264], supports a holding that the California courts have jurisdiction under the facts presently before us. The considerations referred to in *Cornelison,* as applicable in determining "fairness," favor jurisdiction here, i.e., "the

relative availability of evidence and the burden of defense and prosecution in one place rather than another; the interest of a state in providing a forum for its residents or regulating the business involved; the ease of access to an alternative forum; the avoidance of a multiplicity of suits and conflicting adjudications; and the extent to which the cause of action arose out of defendant's local activities." (*Cornelison* v. *Chaney, supra,* at p. 151.)

These considerations weigh heavily toward the conclusion that jurisdiction in California is reasonable. Here, the representatives of the minor Brett Lewis claim that his loss of sight was caused both by the delay by the Washington physicians and by the treatment and surgery by the San Francisco physicians at St. Mary's Hospital. Petitioner and the San Francisco physicians each claim that it was negligence of the other which was responsible for the end result. It would seem obvious that in a situation where each of two parties attributes a poor result to the activities of the other, the issue should be resolved in one action. It would also seem obvious that the most convenient place for the trial of the action on the merits is in San Francisco where the operation was performed and where the hospital records are kept and the operating physicians reside. I would therefore conclude that in light of the petitioner's *purposeful referral of its patient to this state* and the obvious advantages of disposing of the plaintiff's claim in one case, jurisdiction in California is both fair and reasonable.

The majority points to the fact that Dr. Richter is already a named defendant and proper service was effected upon him in California, and that "the plaintiffs cannot be whipsawed" between conflicting claims of two assertedly negligent medical teams. The mere fact that petitioner might be available to satisfy a judgment and that one of its doctors may be available as a witness does not eliminate practicable advantages of having the Spokane Eye Clinic and the other treating physicians named as defendants. Discovery procedures would be facilitated. The totality of evidence would be presented in one action and a judgment could then be rendered for or against all parties involved.

I also do not share the opinion of the majority that the assumption of jurisdiction would tend to discourage the referral of patients to California by out-of-state physicians. I cannot believe that a physician looking for the appropriate specialist to refer his patient to will pause to consider whether to subject himself to the possibility of suit in

California. The risk of suit here would arise only if the out-of-state physician had so treated the patient as to make the physician a substantial factor in causing a harmful effect to his patient while in California. Any ethical doctor who thought he had properly treated his patient would make his referral decision based upon the needs of the patient, not upon the highly speculative chance he would be called upon to defend suit in California.

I would discharge the alternative writ and deny the petition for writ of mandate.

A petition for a rehearing was denied December 10, 1976, and the petition of the real parties in interest for a hearing by the Supreme Court was denied January 5, 1977.